Judge Mills
delivered the Opinion of the Court.
Doran, the plaintiff in error, being a deputy sheriff. hy virtue of an execution in his hands, in favor of Ogden and Hynes against John uedman, seized sundry goods, wares and merchandize in a store, as the property of Redman, and exposed the same to sale in satisfaction of the. demand.
Shaw, the defendant in error, brought an action ef trespass xi et armis> against the sheriff, for taking *412 and carrying away ihr goods claiming (I.'cm as b& property. by virlue of a transfer from Redman waFfi he alleged. exempted them from execution a» tho propel;» of Redman.
•Til,a.
Jiulpmoni for Dor.m.
(Vi'v-v's bill for new trial) or tho ¿ron.id Ü¡ t the jury liml been f ¡inmoral vri'.li -will coníroii.I by the <ler»ut,y shes;-0.
Answer of Do run.
Decree of the c-i'.-nit court for now trial
Interroga ties an! (he unbw-ts-objected to as lOficJí»g-
Decision of the circuit •court on the objections.
'Filis cause was Med and the. principal question in dispute, was whether 1 lie transfer to Shaw, was >-ofc fraudulent and in violation of the rights of creditors,, The jury found for Duran, and judgment was rendered aecoi ¿fingir,
'Vboid a year after the term had passed by, in whrlt the cause was tried, Shaw filed this bill, praying a new (rial at law, rdying exclusively on the ground that, the jury in tluir retirement were divided, and remained out during the course of a night, in the-charge of two deputy sheriffs, and (hat both of them improperly interfered with the jury. One of them by stating facts to the jury, conducing to shew, that til" transfer to Shaw was fraudulent, and tho other, by instructing them (hat they ought to find for Do-ran, which had great influence, with the jury, and induced some of them to surrender their opinion, and to agree to find for Doran, which they, otherwise would not, ha\e done. He obtained an injunction against the costs at law. — He asserts bis entire ignorance of this improper interference with the jury, till long after the term was over, at which the causa wats tried.
Doran answered, contesting these allegations.
The roipd on a final hearing, decreed a new trial at law; but directed Shaw to pay the costs, both at law and in chancery. To rev erse this decree, Doran has proscrufod this writ of error.
At the commencement of the trial in the court below, the counsel for Doran pointed out leading questions in the depositions of fee complainant, and moved the court to expunge every such question with their respective answers.
The court refused to do so, or to permit the counsel for the defendant to object to such questions, as the depositions were read, assigning as a reason, that, in a chancery cause, it was the duty of the court to revise (he whole depositions, and upon examination to give su.'li weigh’, to (he deposition.- as they were entitled to, having a due regard to the influence, the *413 Scanner of asking questions ipigbt have upon the answers given.
heading interrogatories in troth l.wv and chance, ry, vitiate the answers and render them, :t least, entirely incompetent and not to ba heard m either coart. Query — as tgi the whole deposition..
The evidence is ‘otal1’ rejec e H- ■ roil all y for the imoro. rielv of put.i-'-: the. leading interrogatory.
EnelHi and! federal >rpc-troe of o Vug depositions orinterrógala, - ríes r»i the oxa iiinid ion of the witnesses by the commissioners alone sta■«fed.
*413 Thai leading questions are -improper, both in chancery and at law, is a point so well settled, that it would be a useless parade of authority to attempt, to prove it. If might be- a question whether such questions do or do not vitiate the whole deposition. But we need not now consider that, for the point is not made and there ran be no doubt, that it vitiates the answers given, and renders them wholly incompe tent, that is, they ought not to be read or heard at ah. 'Fhe decision of the court below, sustains the competency of the evidence, a.td only allows the objection to reach its credibility, which is contrary to the uniform current of authority.
If that doctrine was to prevail, it might as well be applied to other objections to competence, and even to cases where witnesses were interested. The ground assumed, appears fq-be based in this, that there being no jury, and the chancellor being the only tribunal which could hear and decide, he must be supposed capable, of discriminating, between what was proper and improper evidence, and therefore a motion to reject as incompetent, was wholly unnecessary if this reason is good- then the chancellor is bound to hear every thing presented to him, whether it. be irrelevant, incompetent, or incredible, a«d 'flic parties are at liber y to crowd the record with wh.tt they please, and thus smother justice in its cradle.
The rule, which requires no leading interrogatories, or questions, wliicli evince a coaxing disposition to the witness to answer as the party wishes him. is tested by experience, asid the reas-.u «f it, is evident to evvery one who is well enough a-quainted with human nalnre to discover the influence of perSna-ion and address upon weak or yielding minds hence chancellors have always imposed upon the party who attempts it the penalty of a total rejection of the evidence.
In the English chancery, as well a- that of some of our sister states, and in the pmuie.e of the '’ourts of the United States to this day parties are n->t per aiitted to confront the witnesses and put iuierrogato *414 ríes fo them face to face; but each party obtaining is iledimus must file his interrogatories to be annexed to the commission, and the opposite side files his counter interrogatories in the same way. These are proposed to the witness by the commissioners in private, and bife answers written and sealed up and returned to the proper office, unseen by the patties, till opened and read by order, or rule of court, which is called passing publication. If in interrogatories thus transmitted a party was not allowed to insinuate what kind of an answer he wished, under pain of losing the testimony, the reason is much stronger Ibr adhering to the rule, where the parties are permitted, as in our chancery practice by direct address, to put their enquiries, and to add (lieintimationof looks and gestures, to the influence of a leading question.
•On the hear-. 'Ing below, all im iroper matter ought to he rejected and what is thiis decided asainst constitutes no part of the record unless made so by bill of exceptions or a statement of the chancellor, to iiave the like effect,
Where interrog a torios arc excepted to us leading, the chancellor ought to oxnunge them and the answers to thorn 5b that they may not he certified here,— —If this be not done, thi6 court will consider the cause without. such questions or their answers.-
*414 Our chancery records are subject to revision on copies in an appellate court, therefore care should be taken by inferior tribunals to cleanse the. record of improper matter filed by the parties, and every thing filed there ought not to be considered as park Hence that which the chancellor may reject is no Iongerto.be considered as part of the record; and if either party conceives himself aggrieved by its rejection, he may obtain the statement of the chancellor that the document was rejected and why, or by analogy to proceedings at common law, as is the practice here, the party may take bis exception, shewing the. rejection and procuring a. revision in this court of the propriety of rejecting it- 411 rejected by the court below, as improper, ought to be laid aside and ought not to be certified here,, except upon such exception, in like manner, the leading questions in this record with their- answers, ought, to have been cancelled.
Insisting 0» a compliance with this rule, may im= pose some burden on our chancellors, to cleanse records, when depositions are taken in the loose manner used among os; but still for the sake of justice it must be borne. In other countries, exceptions might be referred to a master .who would cleanse the record and make out a correct, statement of all proper evidence, and this statement preceded the decree, an(\ ho evidence was supposed to belong to the record 00$ *415 inoíiccti in it. B ere the chancellor has frequently to ¿o the work ofa master as well as his own, and these statementsofetidencearedispensed with. But<hereasoii is s-ill more strong that only proper evidence should be toft, in the record, as there is no such statement pointing out what is proper Otherwise our clerks, from the specimens we have often before us, may certify what is unnecessary or improper, and what has not been used below, and thus the cause be here tried on otidence rejected in the inferior tribunals.
Jurors cannot be admitted ta give evidence to impeach a verdict which they haver tendered.-
—-They may be examined to prove their was no verdict, or that the verdict rendered waS not so intended.
Nor can the jurors for the puroose of setting, a sidj, their vendee be examine t® prove the jmprooor interference of the ,*trending sheriffs, b" statiig to them facts and giving tkew instructions.
*415 We shall therefore, consider this cause Without all leading questions, and their answers.
Another question is made, the decision upon which imay be conclusive of the controversy without minutely examining the evidence. No proof of the improper acts of the. deputy sheriffs in the jury room is produced, except the depositions of some of the jurors. The deputies themselves deny such interference, in their depositions. The court below was applied to, by the defendant’s counsel to reject the depositions of these jurors, on the ground, that they proved improper acts in the jurors themselves, and led to an enquiry into the secrets of the jury room, and elicited the reasons for their finding, and made them Witnesses to impeach and set aside their own verdict.
Whether jurors can be admitted to give evidence to impeach the verdict which they have rendered, is a question that has been decided differently, by different courts in the sister states. In this state, as early as the case of Taylor vs. Giger, Hard. 588; the question was decided in the negative.
The cases then cited were considered, and the conclusion was, that they were only admissible to prove that there was no verdict, or to shew, that the verdict rendered, was not intended. This case has been followed by oilier cases since, ami the point may be considered at rest. Steele’s heirs vs. Logan, 3. Marsh. 394.
It is however, contended that this case is different from those decided; and forms an exception to the general rule; that here the jurors are called to prove .improper conduct in the attending sheriffs, and not in themselves. If this was a prosecution against the sheriffs, for this breach of ditty, we should have ne *416 doubt. that the jurors were competent witnesses, Bui this is not the ob ject of the .proof. They took. from the sheriff his instructions and assertions, and some depose that they conceived at the time, that he had a right to give therm, and that trusting to his assertions. they changed their opinions and absolutely agreed to the yerdi- f rendered The motives, or reasons which influenced their determination to change, and their wrongful admission ot that influence, is the very essence of their testimony in favor of the complainant And ú is to prohibit an enquiry into these motives, and these, influences resorted to in the jury room, that they are excluded, it. is because, that parties by subsequent tampering and reasoning with jurors, might sap many verdicts, by using them as w itnesses to prove the grounds of their fimliig: and this is the very matter enquired into in this cause, and their testimony was improperly admitted.
But in a prosecution of the sheriffs for their improper .'onrluct in iho jury room the urors are tjouipetent.
Denny attorney general, and Hardin for plaintiff? ■¿ftayes for defendant.
The decree of the court below, must, therefore, 'be-reversed with costs, and the cause be remanded with directions thereto dismiss the bill with costs* and damages